**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy Earl O'Neil, | No. CV-19-08113-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security ("Commissioner")'s denial of Plaintiff Timothy Earl O'Neil ("Plaintiff")'s application for Title II disability insurance benefits. Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), Commissioner's Response (Doc. 17, "Def. Br."), Plaintiff's Reply (Doc. 18), and the Administrative Record (Doc. 11, "R."). Because the Court finds the denial free of legal error and supported by substantial evidence, it affirms.

**I.    BACKGROUND[1]**

Plaintiff filed an application for Title II disability insurance benefits on March 16, 2015 for a period of disability beginning February 16, 2015 (later amended to July 1,

---
[1] The Court omits a detailed summary of the medical evidence and opinions and hearing testimony and instead will reference relevant evidence and testimony in its analysis.

2015).² (R. at 15.) Plaintiff's date last insured ("DLI") is December 31, 2016. (R. at 18.) The application was denied initially on September 9, 2015, and upon reconsideration on December 30, 2015. (R. at 15.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on October 31, 2017. (R. at 15.) On April 23, 2018, the ALJ issued an unfavorable decision finding Plaintiff not disabled, which was upheld by the Appeals Council on February 20, 2019. (R. at 1–3, 15–28.) This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

> In finding Plaintiff not disabled, the ALJ determined:
> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), except the claimant could sit for about six hours, stand and/or walk about four hours out of an eight-hour workday, and needed a cane for ambulation and balance. The claimant could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds. He was able to occasionally balance, stoop, and crouch, but was not able to kneel or crawl. The claimant could frequently finger and feel. He should have avoided hazards, including unprotected heights, uneven terrain, and moving machinery.

(R. at 21.) In formulating this residual functional capacity ("RFC"), the ALJ gave "significant weight" to the opinion of Dr. Donald Fruchtman, a consultative examining physician, while assigning only "little" or "no weight" to the opinions of Dr. M.A. Kazmi, Plaintiff's treating neurologist. (R. at 25–26.) The ALJ had also rejected Plaintiff's subjective pain and symptom testimony and gave only "some" weight to subjective testimony from his family and friends. (R. at 21, 26–27.)

A vocational expert ("VE") testified at the hearing. (R. at 114–121.) The VE testified that an individual with Plaintiff's RFC could perform past relevant work as a compliance director. (R. at 116–117.) The VE further testified, however, that if that individual were to be off task for 10% or more of the workday or consistently miss two days of work per month, that individual would not be able to sustain full-time employment.

---

² Plaintiff was previously denied disability benefits by an ALJ in February 2015 for an application claiming similar impairments filed in June 2012. (R. at 127–138.) Plaintiff did not appeal that denial. (R. at 15.) While res judicata ordinarily imposes a continuing presumption of non-disability, *see Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995), the ALJ here found Plaintiff overcame that presumption by claiming an impairment in the present application that was not previously considered, namely, "adjustment disorder with anxiety and depressed mood." (R. at 15–16.)

(R. at 117–118.) Moreover, if such an individual could only occasionally handle or finger, he would not be able to perform the past relevant work since such work requires the ability to use a computer. (R. at 118.) The ALJ found non-disability on the basis of the first hypothetical. (R. at 27.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). The Court "must consider the record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.[3] 20 C.F.R. § 404.1520(a). The claimant bears the burden of

---

[3] At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the final step, where she determines

proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The issues before the Court are: (1) whether the ALJ properly rejected the opinions of Dr. Kazmi, a treating physician; (2) whether the ALJ properly rejected Plaintiff's pain and symptom testimony; and (3) whether the ALJ properly rejected lay testimony from Plaintiff's family.

## III. ANALYSIS

### A. The ALJ properly considered the medical opinions.

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). In formulating the RFC, the ALJ evaluates all medical opinions in the record and assigns a weight to each. 20 C.F.R. §§ 404.1527(b), 404.1527(c). The weight the ALJ gives an opinion depends on a variety of factors, namely: whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)–404.1527(c)(6). Additionally, "[i]n conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Generally, the greatest evidentiary weight is given to opinions of treating physicians; lesser weight is given to opinions of non-treating, examining physicians; and the least weight is given to opinions of non-treating, non-examining physicians. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). A treating physician's opinion is entitled to the most weight because he or she "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2).

---

whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

- 4 -

An ALJ must resolve any conflicts between medical opinions. *Morgan*, 169 F.3d at 601. The ALJ may assign lesser weight to a controverted opinion of a treating physician if the ALJ articulates "specific and legitimate reasons supported by substantial evidence." *Lester*, 81 F.3d at 830. An ALJ may reject any medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of a treating physician's opinion that "was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [claimant's] medical condition, and was based on [claimant's] subjective descriptions of pain"). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding examining physician's opinion constituted "substantial evidence" because it was based on his own independent examination of claimant).

### 1. The ALJ properly weighed the opinion of Dr. Kazmi.

Dr. M.A. Kazmi, Plaintiff's treating neurologist, completed a "Physical Residual Functional Capacity Questionnaire" on July 9, 2015. (R. at 1070–74.) Therein, he opined Plaintiff could only sit, stand, or walk for less than two hours in an eight-hour work day and would require a job that permitted him to shift positions at will and take unscheduled breaks throughout the day. (R. at 1072.) He further opined Plaintiff could "rarely" carry and lift up to ten pounds and could "never" carry or lift anything ten pounds or more. (R. at 1072.) Plaintiff also could "never" look down, turn his head right or left, look up, or hold his head in a static position. (R. at 1073.) He also could "never" twist, stoop, crouch/squat, climb ladders, or climb stairs. (R. at 1073.) Further, Plaintiff had "significant limitations" with reaching, handling, and fingering. (R. at 1073.) Specifically, he could only use his

hands to grasp, turn, or twist objects for 20% of the day; could only use his fingers for fine manipulations 5% of the day; and could only use his arms to reach for 5% of the day. (R. at 1073.) Dr. Kazmi opined that Plaintiff would miss work more than four days per month, which he further specified would be "almost every day." (R. at 1073.) Lastly, he opined Plaintiff would have "constant[]" difficulty concentrating due to pain or other symptoms. (R. at 1071.) Moreover, on January 26, 2016 and February 4, 2016, Dr. Kazmi wrote correspondence stating that Plaintiff was "unable to work in any capacity due to [his multiple medical conditions]." (R. at 1194–95.) Because Dr. Kazmi's opinion is in conflict with the opinion of Dr. Fruchtman, the ALJ's reasons for assigning it lesser weight must be "specific and legitimate" and supported by substantial evidence. *Lester*, 81 F.3d at 830.

The ALJ assigned "little weight" to Dr. Kazmi's opinions in the questionnaire, finding them "not supported by the objective clinical findings, including those contained in [his] own treatment notes." (R. at 25.) In support, the ALJ referenced notes from Dr. Kazmi's examination of Plaintiff on July 9, 2015, the same day he completed the questionnaire, wherein he noted Plaintiff had a "supple" neck with a "full range of motion," a "normal" gait, "normal strength in all four extremities," and "no deformities or abnormalities" in his extremities. (R. at 1078.) He made identical notations at every appointment from August 26, 2013, when he first examined Plaintiff, to July 9, 2015.[4] (R. at 1078, 1080, 1083, 1085, 1226, 1229, 1231–32.) Indeed, Dr. Kazmi's notations regarding a full range of motion in Plaintiff's neck directly contradict his opinion that Plaintiff can "never" look down or up, turn his head left or right, or hold his head in static position. With regards to Plaintiff's ability to stand and walk, however, the inconsistency is not as blatant. While Dr. Kazmi noted Plaintiff had a "normal gait," "normal strength in all four extremities," and "no deformities or abnormalities" in his extremities, he simultaneously noted Plaintiff experienced "numbness, tingling, [and] pain" in his upper and lower extremities. (R. at 1078.) The ALJ did not ignore the latter. Rather, the ALJ acknowledged

---

[4] At all appointments after July 9, 2015, Dr. Kazmi instead noted Plaintiff had "trouble ambulating without support," "generalized weakness but more prominent in the lower extremities," and "normal" gait with the use of a cane; though he still had a supple neck with a full range of motion. (R. at 1213, 1436, 1645, 1647.).

that these "abnormal findings . . . warrant some restriction in work activity . . . but do not justify the extreme limitations provided by Dr. Kazmi." (R. at 26.) Given that certain sections of Dr. Kazmi's treatment notes suggested Plaintiff had no impairment in his extremities ("normal" strength, "no deformities or abnormalities"), the ALJ rationally interpreted these notes as inconsistent with the extreme limitations Dr. Kazmi prescribed. Nevertheless, the ALJ reached an appropriate middle ground between the conflicting notations and determined that Plaintiff did, in fact, have some limitations. As such, the ALJ limited Plaintiff's standing and walking time to four hours a day in the RFC.[5] The Court finds no error in the ALJ's decision to give lesser weight to Dr. Kazmi's assessment based on the aforementioned inconsistencies.

Likewise, the ALJ assigned "little weight" to Dr. Kazmi's opinion regarding Plaintiff's inability to concentrate (R. at 1071) as "not supported by objective testing" and "arguably . . . outside of his area of expertise." (R. at 26.) However, the Ninth Circuit has held that despite not being a mental health specialist, a physician may nonetheless provide a competent medical opinion as to his patient's mental functioning. *Lester*, 81 F.3d at 833. As such, the opinion may not be freely disregarded without a legally sufficient reason. Nevertheless, an ALJ may consider the specialization of a physician in determining how much weight to afford a medical opinion. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Moreover, the ALJ may consider the degree of support the medical opinion has from objective medical evidence. 20 C.F.R. § 404.1527(c)(3). Here, prior to this assessment, there is no documentation by Dr. Kazmi of any impairment relating to Plaintiff's ability to concentrate, nor did Plaintiff ever complain to Dr. Kazmi about any issues with respect to concentrating or mental functioning in general. Thus, while the Court finds Dr. Kazmi's opinion regarding Plaintiff's ability to concentrate to be competent evidence despite it

---

[5] The consultative examiner, Dr. Fruchtman, opined Plaintiff could walk between four and six hours in an eight-hour workday. (R. at 1190.)

arguably being outside of Dr. Kazmi's specialty, it also finds the ALJ did not err in disregarding it for lack of supporting clinical evidence.[6] *Thomas*, 278 F.3d at 957.

Additionally, Dr. Kazmi opined that Plaintiff would be absent from work for more than four days per month "as a result of impairments or treatment," further elaborating next to the box he checked that Plaintiff would be absent "almost every day." (R. at 1073.) The ALJ found this opinion "unpersuasive" for lack of an explanation as to how he arrived at this number. (R. at 26.) Specifically, there is no explanation as to how exactly Plaintiff's impairments would preclude him from being able to regularly show up for work. Moreover, as noted by the ALJ, "[t]reatment modalities have been conservative." (R. at 24.) Indeed, the record discloses that since the alleged date of onset, July 1, 2015, in not one month did Plaintiff see a doctor more than twice, at times even going as long as six months without seeing a doctor at all. Thus, there is no substantial evidence to support the conclusion that Plaintiff would miss "almost every day" of work due to treatment. The Court finds this opinion to be "brief, conclusory, and inadequately supported by clinical findings;" therefore, the Court finds no error in its dismissal. *Thomas*, 278 F.3d at 957.

Lastly, Dr. Kazmi wrote correspondence on January 26, 2016 and February 4, 2016 opining that Plaintiff was "unable to work in any capacity due to [his multiple medical conditions]." (R. at 1194–95.) The ALJ gave this correspondence "no weight," reasoning that it opined to an issue reserved to the Commissioner and "[n]othing in the record suggests that Dr. Kazmi has ever worked for or on behalf of the Social Security Administration or has any specialized vocational knowledge or familiarity to opine whether the claimant can perform work as it exists in the national economy." (R. at 26.) Indeed, whether an individual is "disabled" or "unable to work" is not a medical opinion but rather an "administrative finding" that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Nevertheless, the ALJ may not ignore such opinions and may only

---

[6] Plaintiff contends that the ALJ wrongfully omitted explanation of what testing was required to support Dr. Kazmi's opinion regarding Plaintiff's inability to concentrate. (Pl. Br. at 14.) As an adjudicator, it was not within the province of the ALJ to advise Plaintiff on what evidence to obtain and present to support his case. *See generally* 20 C.F.R. § 404.1512 ("Responsibility for evidence.").

- 8 -

disregard them for legally sufficient reasons according to the same standard for rejecting medical opinions. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); SSR-96-5P (S.S.A.), 1996 WL 374183, *3 (July 2, 1996). Within the correspondence, Dr. Kazmi merely states Plaintiff's impairments and a bare conclusion that Plaintiff is unable to work without discussing or referencing any particular medical evidence to support that conclusion, nor does Dr. Kazmi discuss what Plaintiff is capable of doing. Thus, because the subject matter of the letter solely regards the ultimate administrative finding of disability and nothing more, the ALJ did not err in rejecting it for the specific and legitimate reason that Dr. Kazmi did not possess the requisite administrative knowledge to opine to this issue.

### 2. Dr. Fruchtman's opinion is substantial evidence.

Dr. Donald Fruchtman examined Plaintiff on December 10, 2015 at the behest of the Commissioner. (R. at 1184–92.) He observed that Plaintiff was able to get onto the exam table but that he became lightheaded upon standing. (R. at 1186.) Plaintiff had regular heart rate and rhythm. (R. at 1187.) Plaintiff did, however, have a significantly positive Romberg test[7] and fell backward. (R. at 1187.) Plaintiff did "very well" with squatting, but his balance was an issue when he attempted to stand on his toes and heels or on one foot at a time. (R. at 1187.) Plaintiff stated that he felt better with regards to his lightheadedness and stability when he walked with the cane. (R. at 1188.) Regarding his ranges of motion, they were all normal with the exception of some "minimal spasm and tenderness" in the cervical and lumbar regions. (R. at 1188.) Regarding his hands, Dr. Fruchtman noted a "mild degree of tightness" in tendons in both of his hands and that Plaintiff has Dupuytren's contracture[8] of the right and left side. (R. at 1188.) Plaintiff had 5/5 muscle and grip strength. (R. at 1189.) Plaintiff had difficult delineating between touch and pinprick. (R. at 1189.)

---

[7] This tests an individual's ability to maintain body balance while the eyes are shut and the feet are close together. (Pl. Br. at 7.)

[8] "A Dupuytren contracture is contracture of the palmar fascia usually causing the ring and little fingers to bend into the palm so that they cannot be extended." (Pl Br. at 3.)

Based on his examination, Dr. Fruchtman opined that Plaintiff was able to "frequently" carry and lift 10 pounds but could only "occasionally" carry and lift 20 pounds. (R. at 1191.) He could stand or walk for at least four hours in an eight-hour workday and could sit for six to eight hours in an eight-hour workday without limitations. (R. at 1191.) He could "frequently" kneel, crawl, reach, and handle; and could "occasionally" climb, balance, stoop, or crouch. (R. at 1191.) Dr. Fruchtman also opined that Plaintiff could not work in extreme temperatures, with or around chemicals, around dust or gas fumes, or around excessive noise. (R. at 1192.) He further opined that Plaintiff was not precluded from working due to fatigue. (R. at 1192.)

The ALJ gave "significant weight" to Dr. Fruchtman's opinion, finding it "consistent with the objective clinical findings and the claimant's reports to his doctors, including the neurological deficits, orthostatic dizziness, and pain." (R. at 25.) The ALJ, however, did prescribe greater limitations than Dr. Fruchtman with respect to kneeling or crawling after considering Plaintiff's "subjective complaints of pain, fatigue, and dizziness" as well as "the neurological deficits persistently demonstrated on examination." (R. at 25.)

Because Dr. Fruchtman examined Plaintiff and based his opinions on that examination, his opinion constitutes substantial evidence that the ALJ was free to use to support her decision. *See Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149.

**B.     The ALJ properly disregarded Plaintiff's subjective testimony.**

Because the severity of an impairment may be greater than what can be shown by objective medical evidence alone, the ALJ considers a claimant's subjective testimony regarding pain and symptoms. 20 C.F.R. § 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The claimant, however, must still show objective medical evidence of an underlying impairment that could be reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a); *see also Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain [and symptoms], or else disability benefits would be

available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."). However, while such evidence is required to show the existence of an underlying impairment, "the [ALJ] may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Nevertheless, the ALJ evaluates the testimony in relation to the objective medical evidence and other evidence in determining the extent to which the pain or symptoms affect his capacity to perform basic work activities. 20 C.F.R. § 404.1529(c)(4).

Unless there is evidence of malingering by the claimant, the ALJ may only reject pain or symptom testimony for reasons that are specific, clear, and convincing. *Burch*, 400 F.3d at 680. In evaluating the credibility of a claimant's testimony, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997); *see* 20 C.F.R. § 404.1529(c)(4). General findings pertaining to a claimant's credibility are not sufficient. *Lester*, 81 F.3d at 821. Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Nevertheless, if the ALJ explains her decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the social security context).

Here, the ALJ cited no evidence of malingering and found Plaintiff had three underlying impairments: (1) diabetes mellitus with neuropathy, (2) orthostatic

hypotension, and (3) lumbar and thoracic spine degenerative disc disease. (R. at 18.) The ALJ then summarized Plaintiff's testimony as follows:

> The claimant testified he was unable to work due to diabetes, glaucoma, vision loss, neuropathy, and pain symptoms. The claimant testified the diabetes was causing problems with his nervous system and organs. He stated he was going blind in his right eye. He stated he has neuropathy in his hands and no longer had a sensation to urinate. The claimant testified he experienced severe hand pain, feet pain, chest pain, and back pain. He stated he experiences trigeminal neuralgia multiple times each day. The claimant testified he spent most of his day doing physical therapy, hydrotherapy, yoga, sitting, and wandering around the house. He stated he could not drive, but occasionally go to the store. He stated he had difficulty concentrating, but could use a tablet to check emails and delete them. The claimant stated he does not use the tablet for anything else.

(R. at 21, 95–111.) The ALJ rejected Plaintiff's testimony for two reasons. First, she found it "not entirely consistent with the medical evidence and other evidence in the record." (R. at 21.) The ALJ analyzed the evidence and testimony for each impairment separately.

First, with regards to Plaintiff's diabetes mellitus, the ALJ cited to a number of treatment records in finding that Plaintiff's pain and symptoms associated with diabetes mellitus were not work-preclusive. Specifically, she referenced the same previously discussed treatment notes from Dr. Kazmi where Plaintiff was noted as having a normal gait and normal strength in his extremities (R. at 1078), but additionally noting ones that indicated Plaintiff had weakness more prominent in the lower extremities and coordination issues upon sudden standing (R. at 1213). (R. at 23.) She also pointed out that Dr. Kazmi noted Plaintiff had difficulty ambulating without support and a normal gait but with the use of a cane. (R. at 1436.) However, she noted that a diabetic foot exam on August 26, 2016 was "normal." (R. at 23.)

The ALJ found that notwithstanding Plaintiff's complications due to diabetic neuropathy he is capable of working at the light exertional level. (R. at 22.) The ALJ prescribed the "light" exertional level, specifically recognizing that Plaintiff has persistent neurological deficits that affect his hands and feet. (R. at 22.) Moreover, she limited the amount of time he stands or walks to four hours, provided for use of a cane, proscribed

work at heights and around other hazards, and limited the type and frequency of postural and manipulation activities to account for neurological deficits in his lower extremities. (R. at 23.) Thus, the Court finds no error in the ALJ's consideration of Plaintiff's testimony with respect to his diabetic neuropathy as she appropriately accommodated his limitations in the RFC. (R. at 21.)

Second, with regards to Plaintiff's orthostatic hypotension,[9] the ALJ noted Plaintiff had a positive tilt table test, which indicated Plaintiff has orthostatic hypotension. (R. at 22, 1348.) On December 11, 2015, Plaintiff presented to Dr. Fadi Atassi, a cardiologist, for evaluation of chest pain. (R. at 1210.) The ALJ noted Plaintiff told Dr. Atassi that when the pain becomes significant, he experiences shortness of breath and dizziness. (R. at 1210.) Moreover, Plaintiff reported only shortness of breath and dizziness, but no loss of consciousness, weakness, numbness seizures, headaches, chest pain, arm pain on exertion, or palpitations, as further noted by the ALJ. (R. at 22, 1210.) The ALJ also noted that as of March 19, 2015, Plaintiff had not had any "true syncopal episodes," but that he "does get orthostatic dizziness." (R. at 22, 1339.) The ALJ thus concluded that "the claimant's cardiac records do not support persistent cardiac symptoms, other than orthostatic dizziness." (R. at 22.) Nevertheless, the ALJ did take Plaintiff's complaints of orthostatic dizziness into account. Specifically, she limited the time he could stand and/or walk; provided for the use of a cane to aid in his balancing; and proscribed working at heights, in uneven terrain, and around moving machinery. (R. at 21, 22.) She also provided for decreased stooping and crouching and prohibited kneeling and crawling to reduce the chances of triggering his orthostatic dizziness. (R. at 21, 22.)

However, Plaintiff alleges the ALJ improperly disregarded his testimony regarding the intensity, persistence, and limiting effects of his orthostatic dizziness. Specifically, Plaintiff argues the ALJ's conclusion that he was "'doing good' from a cardiac perspective" (R. at 22) does nothing to undermine his testimony regarding the severity of his orthostatic

---

[9] "Orthostatic hypotension is a decrease in systolic and diastolic blood pressure to below normal when a person assumes an upright position after getting up from a bed or chair." (Pl. Br. at 3.)

dizziness. (Pl. Br. at 18.) He alleges that the orthostatic dizziness is "not cardiac related, but caused by autonomic neuropathy."[10] (Pl. Br. at 18).

However, Plaintiff presented to Dr. Atassi, a cardiologist, for evaluation of his chest pain. (R. at 1210.) It was Plaintiff who told Dr. Atassi that his chest pain leads to dizziness. (R. at 1210.) Thus, Dr. Atassi was employed to diagnose and treat Plaintiff's dizziness. As such, the ALJ did not err in discussing and citing to records and opinions from Dr. Atassi as they were records relevant to Plaintiff's dizziness. Moreover, Plaintiff informs the Court that orthostatic hypotension entails a "decrease in systolic and diastolic blood pressure." (Pl. Br. at 3.) Thus, even a lay person, such as the ALJ, can make the rational interpretation that the heart, an organ which pumps blood, is implicated by orthostatic hypotension. For these reasons, the Court will not disturb the ALJ's rational interpretation of the record and finds no error in the ALJ's rejection of Plaintiff's testimony as it relates to his orthostatic hypotension.[11]

Third, with regards to Plaintiff's degenerative disc disease, the ALJ noted, "a thoracic spine x-ray revealed straightening of the normal thoracic spine with no compression fracture or significant malalignment. It showed mild degenerative discogenic disease in the lower lumbar spine, but no spondylolisthesis or significant malalignment." (R. at 23, 1169.) The ALJ also noted, "a thoracic spine MRI revealed a disc protrusion at T7-8 and T8-9, otherwise it was unremarkable." (R. at 23, 1306.) She remarked that "the clinical findings from physician examinations do not support the degree of symptoms the claimant has alleged"; "the physician examinations primarily revealed neurological

---

[10] The Court notes an EMG done on September 4, 2013 showed "sympathetic skin responses were present in all four extremities, suggesting minimal if any autonomic neuropathy." (R. at 827.) Moreover, Plaintiff testified at a prior disability hearing that he had workup done at the Mayo Clinic and the doctors there diagnosed cardiac autonomic neuropathy as the cause of his chest pain. (R. at 52.) However, there are no records from the Mayo Clinic in the record before the Court.

[11] Even if, *arguendo*, the ALJ had improperly (irrationally) concluded that orthostatic hypotension is a cardiac rather than a neurological issue, as Plaintiff interprets it (R. at 18), such an error would be harmless as "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Specifically, the ALJ found—regardless of its etiology—that the dizziness Plaintiff experiences is not work-preclusive. While it does hinder his ability to engage in some work activity, the ALJ put appropriate restrictions in his RFC.

findings discussed above but showed little with regard to the claimant's spinal impairment." (R. at 23.)

Thus, the ALJ concluded that "the clinical findings reported in the progress notes focus on neurological signs; there is little in the way of orthopedic signs, such as decreased or painful range of motion, decreased strength,[12] muscle atrophy, or tenderness to palpation." (R. at 24.) Nevertheless, the ALJ accommodated Plaintiff's subjective reports of back pain in the RFC by prescribing a light exertional level and restrictions in postural activities. (R. at 21, 24.)

The second reason the ALJ discounted Plaintiff's testimony was because Plaintiff "has not generally received the level of medical treatment one would expect for a disabled individual," noting that "[t]reatment modalities have been conservative." (R. at 24.) Specifically, the ALJ argued that "with claimant's alleged severity of pain and limitations, one would expect more significant findings on both the diagnostic imaging and exams, as well as more complex treatment." (R. at 24.) She noted that Plaintiff was never recommended surgery or underwent more invasive procedures, such as epidural injections or nerve ablations. (R. at 24.) This all stands for the ALJ's proposition that if Plaintiff's pain and symptoms were really as severe as alleged, he would be doing more for them, instead of merely taking "routine prescription medication" and engaging in other home remedies such as hydrotherapy and yoga. (R. at 24.)

This reason is sufficient. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotations and citation omitted). An ALJ is free to take into account the amount of treatment a claimant receives for an impairment in determining the nature and severity of the impairment, as well as medication and any other measures used. 20 C.F.R. §§ 404.1529(c)(3)(iv)–404.1529(c)(3)(vi). Thus, the Court finds no error here.

---

[12] The Court notes and clarifies that while Plaintiff did exhibit decreased strength in his lower extremities as noted by Dr. Kazmi and as previously discussed, the ALJ here is referring to the lack of a finding of decreased strength in Plaintiff's spine in particular.

The ALJ committed no legal errors in considering the entirety of Plaintiff's subjective testimony. Although a lack of objective medical evidence cannot be the sole basis on which a claimant's testimony is rejected, it is still a factor that the ALJ may consider. *Burch*, 400 F.3d at 681. Here, the lack of objective medical evidence showing "more significant findings on both the diagnostic imaging and exams" (R. at 24) in combination with Plaintiff's conservative treatment is sufficient to discount his testimony. Though, in actuality, the ALJ did not discount the entirety of his testimony. Rather, the ALJ had made appropriate accommodations and restrictions in the RFC to account for Plaintiff's subjective complaints. Simply because these complaints did not give rise to a finding of disability does not warrant a reversal where the ALJ rationally interpreted the record and based her conclusions on substantial evidence therein.

### C. The ALJ properly disregarded lay testimony.

Nonmedical ("lay witness") sources may testify as to how a claimant's symptoms affect his activities of daily living and ability to work. 20 C.F.R. § 404.1529(a). Such testimony is "competent evidence" that an ALJ may not disregard unless he or she gives "reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (internal quotations and citation omitted).

The record contains several lay opinions from Plaintiff's family and friends. (R. at 438–450, 486–487.) The ALJ gave "some weight" to all of the lay opinions collectively, reasoning that none of the witnesses "have the appropriate psychological or medical training to make exacting observations, diagnoses, and determine mental or physical limitations." (R. at 26–27.) Moreover, according to the ALJ, "[t]heir statements seem to identify the symptoms from the impairments, but the medical evidence and opinions do not fully support their opinions." (R. at 27.) Plaintiff disputes only the rejection of the opinions of his wife, Kathie O'Neil; son, Michael O'Neil; and sister-in-law, Terrie Sage. (Pl. Br. at 20.)

In her correspondence, Kathie O'Neil describes Plaintiff's inability to not sit or stand long, his need for something to hold onto for balance, his inability to use his hands

effectively, and what his pain is like when he does not take his medication. (R. at 438.) Similarly, Michael O'Neil describes Plaintiff's inability to walk without support, his lightheadedness, his medication requirements, and his forgetfulness. (R. at 447–448.) Lastly, Terrie Sage also described Plaintiff's pain, loss of concentration, lack of balance, dizziness, and need for support. (R. at 442.)

Here, because the ALJ properly rejected Plaintiff's subjective complaints, the Court finds the lay third-party opinions are properly rejected as well as they regard similar symptoms and complaints thereof. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

**IT IS THEREFORE ORDERED** affirming the April 23, 2018 decision of Administrative Law Judge Kelly Walls, as upheld by the Appeals Council on February 20, 2019.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 27th day of January, 2020.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge